UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADEN DE LA CRUZ, *et al.*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-1729 |
| | § | |
| FEDEX GROUND PACKAGE SYSTEM, INC., *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is plaintiff's motion for remand (Dkt. 7) filed by Aden De la Cruz and De la Cruz Delivery, Inc. ("plaintiffs") against FedEx Ground Package System, Inc. and Steven Shelton ("defendants"). After reviewing the motion, response, record evidence, and applicable law, the motion is DENIED.

**I. BACKGROUND**

Plaintiff Aden De la Cruz is an independent contractor who serves as a driver and operator of FedEx delivery routes for De la Cruz Delivery, Inc. Dkt. 1-2 at 2. In 2013, plaintiffs wanted to sell three of their FedEx delivery routes, and they hired an agent to help. *Id.* One of the three routes was a "regular" route and the other two were "swing" routes, which were only operated when other drivers for those routes were absent. *Id.* In January 2013, plaintiffs agreed upon a sales price with PG Courier, a business interested in buying the routes. *Id.* Subsequently, plaintiffs submitted an application for the proposed sale of the routes to FedEx for its approval, which was required. *Id.* The day before the sale allegedly was to go through, the application was denied because the swing routes would not be covered for at least 40 weeks of the year. *Id.* at 3. Plaintiffs were unaware of this requirement and sought clarification from FedEx, but received nothing supporting the existence

of such a requirement. *Id.* Plaintiffs and FedEx allegedly informed PG Courier that the purchase of three routes would be impossible due to the alleged 40-week requirement. *Id.* Yet, a few weeks later, FedEx approved the sale of the three routes without explanation. *Id.* By the time of the approval, PG Courier had already purchased six routes from a different buyer and was no longer interested in buying plaintiffs' routes.

Plaintiffs filed their petition in the 281st Judicial District Court in and for Harris County, Texas in November 2013, and amended their petition (Dkt. 1-2) shortly thereafter. Discovery was conducted in the case, and depositions were taken from several witnesses, including from plaintiff Aden De la Cruz on June 18, 2014. On June 20, 2014, defendants filed a notice of removal to remove this case to federal court on the grounds that Steven Shelton ("Shelton"), a FedEx employee and the sole Texas defendant, was improperly joined[1] in the matter to defeat diversity jurisdiction. Dkt. 1. Plaintiffs subsequently filed a motion to remand, arguing that defendants had not met their burden of proof required to show that joinder was improper. Dkt. 7. Defendants responded that plaintiff De la Cruz's deposition demonstrates that plaintiff's claims against Shelton will not succeed. Dkt. 9. The motion is ripe for review.

## II. LAW

A defendant may remove an action to federal court if that court would have original jurisdiction over the case. 28 U.S.C. § 1441. To establish subject-matter jurisdiction based on diversity, complete diversity of citizenship must exist among the parties, and the amount in controversy must exceed $75,000.00. 28 U.S.C. § 1332. A case may be removed despite the

---

[1] Defendants allege that Shelton was "fraudulently joined" in their complaint, but this court uses the term "improper joinder." The Fifth Circuit has concluded that there are no substantive differences between the two terms, but that it prefers the term "improper joinder" because it is more consistent with the statutory language on which it is based. *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 568 n.1 (5th Cir. 2004).

presence of a non-diverse defendant if that defendant was joined improperly, *i.e.*, without a legal basis to do so. *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004). As the removing party, the defendant bears the heavy burden of demonstrating improper joinder. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003).

A defendant generally establishes improper joinder in one of two ways: "'(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiffs to establish a cause of action against the non-diverse party in state court.'" *Smallwood*, 385 F.3d at 573 (quoting *Travis*, 326 F.3d at 646–47). Defendants do not assert actual fraud in this case. Therefore, to prevent remand the defendants must demonstrate that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against the in-state defendant." *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) (internal quotation marks and citation omitted). The court need not "determine whether plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiff might do so." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308–09 (5th Cir. 2005). A mere theoretical possibility of recovery, of course, is insufficient. *Travis*, 326 F.3d at 648. Further, though factual controversies are resolved in favor of the nonmoving party, in the absence of proof, courts do not "assume that the nonmoving party could or would prove the necessary facts." *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 393–94 (5th Cir. 2000).

There are two ways for a court to predict whether a plaintiff might be able to recover against the in-state defendant. The court can conduct a Rule 12(b)(6)-type inquiry by reviewing the complaint to determine if it states a claim against the in-state defendant. *Smallwood*, 385 F.3d at 573. Or, if the court finds that the plaintiff has "misstated or omitted discrete facts that would determine the propriety of joinder," the court can "pierce the pleadings" in a summary inquiry to

3

"identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573–74. When the court pierces the pleadings in its inquiry, "the motive or purpose of the joinder of the instate defendants is not relevant." *Id.* at 574. Further, if the court chooses to grant discovery on the issue, it should be very narrow. *Id.* However, courts can consider discovery that has been conducted in the case already. *See, e.g.*, *Ameen v. Merck & Co.*, 226 F. App'x 363, 368 (5th Cir. 2007) (considering an improper joinder claim based on facts admitted in a deposition taken in the case prior to removal).

Finally, if the court's reasoning for why all claims fail against an allegedly improperly joined defendant applies equally to all other defendants, a finding of improper joinder is not appropriate. *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) (citing *Smallwood*, 385 F.3d at 575). The justification for this "Smallwood rule," is that the court should not be allowed to use an improper joinder inquiry to dismiss all claims in the case, because it would be inappropriately departing "from the threshold inquiry of jurisdiction into a decision on the merits." *Id.*

Applying these rules to analyze the claims in this case, some claims only require a Rule 12(b)(6) analysis, while others to require the piercing of the pleadings to properly consider omitted facts.

### III. ANALYSIS

Plaintiffs' claims all hinge on the defendants' alleged misrepresentation that a 40-week commitment was required for the sale of swing routes, and this caused plaintiffs various harms by ending or interfering with the sales transaction. Dkt. 1-2 at 3. Defendants have shown that plaintiffs' claims against Shelton based on this alleged misrepresentation cannot succeed largely due to admissions that plaintiff De la Cruz made in his deposition. De la Cruz clearly did not let the

statement stop him from moving forward with the deal. De la Cruz admits that he believed that the approval process was ongoing, and despite the complaint's allegations that the deal would be prohibited, he even communicated to his potential buyer that the process was still ongoing. Dkt. 9-1 at 67–68. These facts undercut elements in each of plaintiffs' claims against Shelton. *See, e.g.*, *Akerblom v. Ezra Holdings, Ltd.*, 509 F. App'x 340, 345 (5th Cir.) (once plaintiff conceded in oral argument that a defendant was not a party to a disputed contract, a required element of the claim could not be met and the breach of contract claim failed).

### A. Breach of Contract Claim

Plaintiffs claim they have properly pled a breach of contract claim against Shelton. Defendants argue that the complaint only states claims against FedEx, not Shelton. Dkt. 9 at 17. Within the breach of contract section of the complaint, plaintiffs only make claims against defendant FedEx, never mentioning defendant Shelton or even a general reference to "defendants," which might allow the court to construe the claim as against both defendants. Dkt. 1-2 at 3–4. Therefore, plaintiffs have not even pled a breach of contract claim against Shelton.[2]

### B. Common Law Fraud Claim

Plaintiffs claim they have properly pled a common law fraud claim against Shelton. Specifically, they claim defendants represented that "[p]laintiffs were forbidden to sell defendants' routes due to an alleged 40-week requirement," and that plaintiffs' reliance on this false statement caused financial injury to plaintiffs, including the lost sale of routes. Dkt. 1-2 at 4. Defendants argue that Shelton made no misrepresentations to defendants; there is no evidence to suggest the falsity of

---

[2] This motion disposes of the breach of contract claim against Shelton because the claim was never made against Shelton. Because the court's reasons for disposing of the claim as to Shelton do not apply to the claim against FedEx, and that claim remains in this case despite the court's reasoning for the other four claims, the *Smallwood* rule does not preclude a finding of improper joinder in this case. *See Smallwood*, 385 F.3d at 574.

statements that plaintiffs complain of; and plaintiff did not rely on these allegedly false statements to their detriment because they knew the deal was in progress and took steps to push the deal forward. Dkt. 9 at 18.

In Texas, the elements of common law fraud are: 1) that a material representation was made; 2) the representation was false; 3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; 4) the speaker made the representation with the intent that the other party should act upon it; 5) the party acted in reliance on the representation; and 6) the party thereby suffered injury. *Aquaplex, Inc. v. Racho La Valencia, Inc.*, 297 S.W. 3d 768, 774 (Tex. 2009).

Defendants' most persuasive argument is that the plaintiffs did not rely on the allegedly false statement that the deal was prohibited. Dkt. 9 at 18–19. Despite plaintiffs' allegations, it is clear that the statement did not prohibit the deal because De la Cruz admits that FedEx was still working to approve the sale, despite the alleged prohibition. Dkt. 9-1 at 67–68 (De la Cruz admits that Shelton told him FedEx was "still working on it."). The approval process was a required step in the sale, known to all parties. Based on the news from FedEx that the approval was in progress, De la Cruz asked Shelton to tell PG Courier to "hang on" because the sale was "still in the [approval] process." *Id.* at 67. PG Courier representative Caterina Gonzalez corroborates that Shelton followed De la Cruz's request by explaining to her that FedEx was still working on the approval process. *Id.* at 91. De la Cruz's admissions show that he did not rely on the statement to his detriment because he did not believe the deal was over and he kept it moving. The claim against Shelton cannot succeed because plaintiffs cannot meet, at least, the fifth element of the claim.

## C. Tortious Interference with Prospective Business Relations Claim

Plaintiffs claim they have properly pled a tortious interference with prospective business relations claim against Shelton. In particular, plaintiffs allege that defendants made false representations that caused the business relationship between plaintiffs and PG Courier to end. Dkt. 1-2 at 5–6. Defendants argue that plaintiffs do not allege facts sufficient to meet several elements of the claim, such as how any allegedly false statements ended the relationship; facts to show that Shelton had a conscious desire to prevent the relationship from occurring; or facts to show plaintiffs suffered harm from the interference. Dkt. 9 at 20.

In Texas, the elements of a claim for tortious interference with a prospective business relations claim are: 1) a reasonable probability that the plaintiff would have entered into a business relationship; 2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; 3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and 4) the plaintiff suffered actual harm or damages as a result of the defendant's interference. *Specialties of Mex., Inc. v. Masterfoods USA*, No. L-09-88, 2010 WL 2488031, at *10 (S.D. Tex. June 14, 2010).

Although plaintiffs allege that the basis of this claim is the allegedly false representation that the "the sale was prohibited due to a 40-week requirement," plaintiffs do not explain how this statement "prevented the relationship from occurring." Further, plaintiffs admit they did not stop pursuing the deal after hearing the statement, and even informed PG Courier that the process was still ongoing. Plaintiffs' own admissions show that the statement is not what prevented the relationship from occurring, because the statement did not stop plaintiffs from pursuing the sale. The

claim against Shelton cannot succeed because plaintiffs cannot meet, at least, the second element of the claim.

### D. Tortious Interference with an Existing Contract Claim

Plaintiffs claim they have properly pled a tortious interference with an existing contract claim against Shelton. In particular, plaintiffs allege that defendants intentionally interfered with a contract by making false representations that caused the business relationship between plaintiffs and PG Courier to end. Dkt. 1-2 at 5–6. Defendants argue that there was no enforceable contract between the parties; Shelton did not interfere with the contract; and any actions or words by Shelton did not cause plaintiffs' damages. Dkt. 9 at 21.

In Texas, the elements of a claim for tortious interference with an existing contract are: 1) the existence of a contract subject to interference; 2) willful and intentional interference; 3) that proximately causes damage, and 4) actual damage or loss. *Specialties of Mex.*, No. L-09-88 at *9.

Though plaintiffs allege that the interference was the allegedly false representation that the "the sale was prohibited due to a 40-week requirement," plaintiffs do not explain how this statement caused its business relationship with PG Courier to end. Further, De la Cruz admitted that defendants said they were still working to approve the contract, despite the alleged 40-week requirement, and he also communicated to PG Courier that the contract approval was still ongoing. Dkt. 9-1 at 67. The statements of a 40-week requirement did not cause the contract or relationship to end because De la Cruz continued on with the sale despite knowing about the alleged requirement, and the sale was later approved by FedEx. The claim against Shelton cannot succeed because plaintiffs cannot meet, at least, the third element of the claim.

E.	**Negligent Misrepresentation Claim**

Plaintiffs claim they have properly pled a negligent misrepresentation claim against Shelton. Specifically, they claim defendants misrepresented that the sale would not go through due to an alleged 40-week requirement, and plaintiffs relied upon this statement. Plaintiffs claim it caused them harm when plaintiffs and PG Courier were forced to cancel their transaction. Dkt. 1-2 at 39–40. Defendants argue that there was no false information provided, and the information provided did not cause the harm because plaintiffs did not rely upon it. Dkt. 9 at 24.

In Texas, the elements of a claim for negligent misrepresentation re: 1) that the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary business; 2) the defendant supplies "false information" for the guidance of others in their business; 3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and 4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Fed Land Bank Ass'n of Tyler v. Sloane*, 825 S.W. 2d 439, 442 (Tex. 1991).

It is clear that the transaction was not cancelled because plaintiffs relied on the alleged misrepresentation. Plaintiffs show they did not rely on the allegedly false statements because they continued to pursue the contract despite the alleged misrepresentation by informing PG Courier to "hang on" because the approval process was ongoing. Dkt. 9-1 at 71. The claim against Shelton cannot succeed because plaintiffs cannot meet, at least, the fourth element of the claim.

### III. CONCLUSION

Based on foregoing reasoning, the court finds no reasonable basis for the district court to predict that the plaintiffs might be able to recover against Shelton. The court determines that Shelton was improperly joined.[3] The motion to remand (Dkt. 7) is **DENIED**.

It is so **ORDERED**.

Signed at Houston, Texas on October 17, 2014.

_____
Gray H. Miller
United States District Judge

---

[3] Plaintiffs also argue that defendants did not timely seek removal. Dkt. 7 at 3. However, "a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). Because defendants removed the case on June 20, 2014 based on testimony from the deposition of Aden De la Cruz, taken on June 18, 2014, plaintiffs timely removed. Dkt. 9 at 25; *See, e.g.*, *Ameen*, 226 F. App'x at 368 (finding that a removal within 30 days of the date of a deposition upon which the removal was based was proper).